## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                          :
WORLD TRADE CENTER PROPERTIES LLC,        :
et al.,                                   :
                                          :
                    Plaintiffs,           :
                                          :
          v.                              :         Civil Action No. 10 CV 1642
                                          :
GREAT LAKES REINSURANCE (UK) PLC,         :         This Action Relates to:
et al.,                                   :         In re September 11 Litigation
                                          :         21 MC 101 (AKH)
                                          :
                    Defendants.           :
------------------------------------------------------------x
```

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT SUBMITTED BY DEFENDANTS GREAT LAKES REINSURANCE (UK) PLC AND CERTAIN LONDON UNDERWRITERS AT LLOYD'S (SYNDICATES 33, 1003, 2003, 1208, 1243, 0376 AND 1225)

David J. Przygoda
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Phone: (212) 841-0496
Fax: (646) 728-1597
David.Przygoda@ropesgray.com

Kenneth W. Erickson
(admitted pro hac vice)
Matthew M. Burke
(admitted pro hac vice)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA  02199
Phone: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for London Underwriters*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

RELEVANT PRIOR PROCEEDINGS ..................................................................................3

I.      THE WTCP PLAINTIFFS' INSURANCE RECOVERY .............................................3

II.     THE RECOVERY ACTION .........................................................................................4

     A.      The London Underwriters' Subrogation Action....................................................4

     B.      This Court's December 11, 2008 Order .................................................................5

     C.      This Court's April 29, 2009 Order .........................................................................5

     D.      This Court's August 13, 2009 Order ......................................................................6

     E.      The London Underwriters' Settlement with the Aviation Defendants....................7

     F.      The WTCP Plaintiffs' Challenge to the Subrogating Insurers' Settlement..............7

     G.      The WTCP Plaintiffs' Claims in the Recovery Action ...........................................8

III.    THE WTCP PLAINTIFFS' DECLARATORY JUDGMENT ACTION ..........................9

ARGUMENT .......................................................................................................................9

I.      NEW YORK SUBROGATION LAW PERMITS INSURERS TO RECOVER
        FROM A THIRD-PARTY TORTFEASOR FOLLOWING PAYMENT TO AN
        INSURED......................................................................................................................10

II.     THE WILPROP SUBROGATION PROVISION UNAMBIGUOUSLY
        REFERS TO LEGALLY RECOVERABLE TORT LOSS OR DAMAGE....................11

     A.      The Phrase "Uninsured Loss or Damage" Means Legally Recoverable
                Tort Loss or Damage ............................................................................................12

     B.      The Subrogation Context In Which This Issue Arises Confirms The Plain
                Meaning of the WilProp Subrogation Provision ....................................................17

III.    THE WTCP PLAINTIFFS' POSITION PRODUCES NONSENSICAL
        RESULTS......................................................................................................................18

IV.     THE WILPROP SUBROGATION PROVISION APPLIES ONLY TO JOINT
        RECOVERY ACTIONS ................................................................................................20

CONCLUSION....................................................................................................................21

28728297_1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allendale Mut. Ins. Co. v. Excess Ins. Co., Ltd.*,
   992 F. Supp. 271 (S.D.N.Y. 1997)..................................................................15, 16

*Currier, McCabe & Assocs., Inc. v. Maher*,
   906 N.Y.S.2d 129 (N.Y. App. Div. 2010) .......................................................16, 17

*Dapuzzo v. Globalvest Mgmt. Co., L.P.*,
   263 F. Supp. 2d 714 (S.D.N.Y. 2003)..................................................................10

*Fasso v. Doerr*,
   12 N.Y.3d 80 (2009) ........................................................................................14, 17

*Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*,
   Docket No. 10-0797-cv, 2011 WL 1601993 (2d. Cir. Apr. 29, 2011) ...................14

*Fischer v. Steffen*,
   797 N.W.2d 501 (Wis. 2011) .................................................................................18

*Hamilton v. Khalife*,
   735 N.Y.S.2d 564 (N.Y. App. Div. 2001) .............................................................10

*Hayes v. Normandie LLC*,
   Index No. 105343/99, 2002 N.Y. Slip. Op. 40311U, 2002 WL 1748675 (N.Y. App.
   Div. June 6, 2002), *aff'd as modified by* 761 N.Y.S.2d 645 (N.Y. App. Div. 2003)...............19

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.*,
   650 F.3d 145 (2d Cir. 2011)....................................................................................8

*K. Bell & Assocs., Inc. v. Lloyd's Underwriters*,
   97 F.3d 632 (2d. Cir. 1996).....................................................................................10

*Martin v. Martin*,
   5 A.D.2d 307 (N.Y. App. Div. 1958) ....................................................................19

*Norman v. White Consolidated Indus., Inc.*,
   Appeal No. 01-A-01-9205-CV-00205, 1992 Tenn. App. LEXIS 744
   (Tenn. Ct. App. Aug. 26, 1992) ...........................................................................18

*Ocean Partners, LLC v. North River Ins. Co.*,
   546 F. Supp. 2d 101 (S.D.N.Y. 2008).....................................................................10

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*,
   754 F. Supp. 2d 616 (S.D.N.Y. 2010).....................................................................16

*Rothenberg v. Lincoln Farm Camp., Inc.*,
    755 F.2d 1017 (2d Cir. 1985)..................................................................................16

*Schoeps v. Museum of Modern Art*,
    594 F. Supp. 2d 461 (S.D.N.Y. 2009).......................................................................9

*SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*,
    222 F. Supp. 2d 385 (S.D.N.Y. 2002), *aff'd by World Trade Ctr. Props. LLC v.*
    *Hartford Fire Ins. Co.*, 345 F.3d 154 (2d Cir. 2003)..................................................3

*SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*,
    No. 01 Civ. 9291 (MBM) (S.D.N.Y. Apr. 29, 2004), *aff'd by SR Int'l Bus. Ins. Co.,*
    *Ltd. v. World Trade Ctr. Props. LLC*, 467 F.3d 107 (2d Cir. 2006).........................4

*SR International Bus. Ins. Co., Ltd. v. World Trade Ctr. Props. LLC*,
    Nos. 01CV9291 (HB), 02CV0017 (HB), 2008 WL 2358882 (S.D.N.Y. June 10,
    2008), *aff'd* 343 F.App'x 629 (2d Cir. 2009) ............................................11, 14, 18

*Two Guys from Harrison- N.Y., Inc. v. S.F.R. Realty Assoc.*,
    472 N.E.2d 315 (N.Y. 1984)...................................................................................16

*United States Trust Co. of N.Y. v. Jenner*,
    168 F.3d 630 (2d. Cir. 1999)....................................................................................10

*Veazey v. Allstate Tex. Lloyds*, No. 3:04-CV-182-L, 2007 WL 29239
    (N.D. Tex. Jan.3, 2007) .....................................................................................17, 18

*Winkelmann v. Excelsior Ins. Co.*,
    85 N.Y.2d 577 (1995) ........................................................................11, 14, 17

*Zurich Am. Ins. Co. v. ABM Indus., Inc.*,
    397 F.3d 158 (2d. Cir. 2005).....................................................................................10

## STATUTES

CPLR § 4545............................................................................................... *passim*

## OTHER AUTHORITIES

4 Couch, Insurance 3d § 61:4 .....................................................................................10

28728297_1

Pursuant to the Court's Order of November 1, 2011, Defendants Great Lakes Reinsurance (UK) PLC and Certain London Underwriters at Lloyd's (Syndicates 33, 1003, 2003, 1208, 1243, 0376 and 1225) (collectively, the "London Underwriters") respectfully submit this memorandum of law in support of their motion for summary judgment requesting that the Court enter an order rejecting the WTCP Plaintiffs' claim that they are entitled to take away $35.4 million that the London Underwriters received when they settled their tort claims against the Aviation Defendants.[1]

## **INTRODUCTION**

The London Underwriters insured shares of the first-party property insurance placed by the WTCP Plaintiffs in mid-2001 for the World Trade Center Complex buildings.  The London Underwriters paid their full per-occurrence limit to the WTCP Plaintiffs in 2002 and brought a tort action in subrogation against the Aviation Defendants.  More than a year later, the WTCP Plaintiffs brought separate tort claims against the Aviation Defendants for their alleged *uninsured* loss.[2]  In the Recovery Action, the London Underwriters and other insurers participated with the Aviation Defendants in a mediation before Judge Martin and agreed to settle all insurance subrogation claims.  That settlement addressed only the subrogating insurers'

---

[1] Plaintiffs in this action are referred to herein as the "WTCP Plaintiffs" and comprise World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, and 4 World Trade Center LLC; the term "Aviation Defendants" refers to those airlines, airport operators, and airport security companies that are defendants in the matter styled *In re September 11 Property Damage and Business Loss Litigation*, 1:21-mc-00101-AKH (S.D.N.Y. filed Jan. 7, 2003) (the "Recovery Action").

[2] This Court subsequently ruled that the maximum amount the WTCP Plaintiffs could legally recover from the Aviation Defendants is $2.805 billion, which is materially less than the total insurance payments of $4.091 billion that the WTCP Plaintiffs received. *See infra* at 4-6.  This Court recently requested summary judgment briefing from the Aviation Defendants and WTCP Plaintiffs on the question of whether this ruling precluded any remaining claims the WTCP Plaintiffs have in the Recovery Action.

tort claims and damages, which the WTCP Plaintiffs were precluded from recovering under CPLR § 4545.

The WTCP Plaintiffs nevertheless opposed the subrogating insurers' settlement before this Court and in the Second Circuit, arguing that they had the legal right to block and preclude the subrogating insurers' settlement and recovery. Those arguments failed and the Aviation Defendants made the settlement payments to the insurers. Net of costs, the tort settlement share received by the London Underwriters in 2011 for insurance payments they made to the WTCP Plaintiffs in 2002 totaled $35.4 million.

The WTCP Plaintiffs then activated this declaratory judgment action, seeking to take away from the London Underwriters and other subrogating insurers the settlement proceeds from their hard-earned resolution with the Aviation Defendants. In effect, the WTCP Plaintiffs ask this Court to rule that, despite having been paid the insurance proceeds years ago, the WTCP Plaintiffs are entitled now to be paid a second time by the same insurers for the same loss by taking from those insurers the amount they recovered in the subrogation settlement with the Aviation Defendants. That settlement was based on the *only* claim the London Underwriters could have brought against the Aviation Defendants – the *legally recoverable tort loss or damage* arising from the insurance proceeds paid by the London Underwriters to the WTCP Plaintiffs. The WTCP Plaintiffs are precluded by CPLR § 4545 from seeking from the Aviation Defendants legally recoverable tort loss or damage for which they already have been paid by insurance. As a matter of logic, policy and fairness, the WTCP Plaintiffs cannot seek or obtain a double recovery indirectly by taking away the London Underwriters' subrogation recovery.

The WTCP Plaintiffs turn a blind eye to these controlling legal principles and wrongly argue that the parties can alter the law by contract and, by focusing on a few words read out of

-2-

context, that the insurance contracts at issue allow them to be paid twice by insurers for the same loss or damage.  But New York law is clear that the *only* recovery an insurer may pursue against a tortfeasor in subrogation is for tort loss or damage caused by that tortfeasor's actions, and the insurer's recovery is capped at the loss or damage it has paid to the insured.  Here, the WTCP Plaintiffs are not entitled directly or indirectly to the amount the London Underwriters recovered in subrogation from the Aviation Defendants.  As detailed below, the tort-based limitations necessary to the subrogation provision provide the only reasonable reading of the contract, and this Court should grant summary judgment to the London Underwriters on that basis.

## RELEVANT PRIOR PROCEEDINGS

### I.    THE WTCP PLAINTIFFS' INSURANCE RECOVERY

The London Underwriters underwrote a portion of the WTCP Plaintiffs' first-party property insurance effective on September 11, 2001 for the World Trade Center Complex.  The limit of this property insurance program was $3,546,800,305 per occurrence, and the London Underwriters paid their share of this limit in 2002.  *See* Chart of WTCP Main Site Pls.' Prop. Ins. Payments Received produced in Recovery Action at WTCP 0302809-810.  (Declaration of Matthew M. Burke ("Burke Decl."), Ex. A).  Following September 11th, the WTCP Plaintiffs pursued coverage litigation against their first-party property insurers, claiming that the terrorist attack was two occurrences requiring payment of a second $3.5 billion limit.  As it related to the London Underwriters, this litigation was resolved in two steps:  (1) the federal trial court (Martin, J.) determined that those insurers who bound coverage on a broker form known as "WilProp" provided a single occurrence limit,[3] and (2) following a three-month trial before

---

[3]  *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*, 222 F. Supp. 2d 385 (S.D.N.Y. 2002), *aff'd by World Trade Ctr. Props. LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154 (2d Cir. 2003).

Judge Mukasey in 2004, a jury decided that the London Underwriters bound coverage on the WilProp broker form.[4]  As to certain other insurers, the WTCP Plaintiffs' coverage litigation continued through settlement, at which point the WTCP Plaintiffs had recovered a total of $4.091 billion in property insurance payments.  *See* Summ. Order regarding Mot. for Collateral Setoff and Summ. J., *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 1:21-mc-00101-AKH (S.D.N.Y. Sept. 30, 2009), ECF No. 945 (Burke Decl., Ex. B).[5]

## II.    THE RECOVERY ACTION

### A.    The London Underwriters' Subrogation Action

The London Underwriters were the first insurers to bring an action in subrogation against the Aviation Defendants, filing in January of 2003.  Complaint, *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 03-cv-0131-AKH (S.D.N.Y. Jan. 7, 2003) (Burke Decl., Ex. C).[6]  Their action was based expressly on the subrogation rights they acquired as a result of payments made to the WTCP Plaintiffs and other insureds for loss or damage sustained on 9/11.  *Id.* at ¶ 6.  The London Underwriters alleged that the Aviation Defendants were liable to them in tort up to the amount they had paid their insureds.  The London Underwriters did not make or pursue any other

---

[4] Verdict Form, *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291 (MBM) (S.D.N.Y. Apr. 29, 2004), *aff'd by SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props. LLC*, 467 F.3d 107, 120-21 (2d Cir. 2006).

[5] Unless otherwise indicated, the decisions and pleadings identified herein are from the Recovery Action.

[6] Prior to filing suit, the London Underwriters sought the WTCP Plaintiffs' cooperation in jointly pursuing claims in the Recovery Action.  The WTCP Plaintiffs expressly declined to do so.  *See* Letter from Michael J. Kuckelman, on behalf of the Lloyd's Group, to Meyer Koplow and Jeff Boffa, on behalf of the WTCP Plaintiffs, dated Dec. 2, 2002 (Burke Decl., Ex. D).  Following the success of the London Underwriters and other plaintiffs in opposing the Aviation Defendants' motion to dismiss, Op. and Order Den. Defs.' Mots. to Dismiss at 2, *In re Sept. 11 Damage & Bus. Loss Litig.*, 21 MC 97 (AKH), (S.D.N.Y. Sept. 9, 2003) Docket No. 166, other commercial claimants filed suit in the Recovery Action.

claims.  The payments made by the London Underwriters to their insureds totaled $138,800,000, of which $61,670,000 was paid to the WTCP Plaintiffs.  *See* London Underwriters' Damage Disclosure Forms (Burke Decl., Ex. E).  The London Underwriters then proceeded through seven years of complex litigation until they negotiated in 2010 an agreement to settle these tort recovery claims with the Aviation Defendants.

B.     **This Court's December 11, 2008 Order**

In 2004, the WTCP Plaintiffs brought their own "uninsured" tort claims against the Aviation Defendants, asserting their separate rights to recover for the alleged damage to the WTC Complex property beyond what they had received in insurance payments from their first-party property insurers.  *See* Cross-Claims by the WTCP Entities Against Certain Defendants in Plaintiffs' Amended Flight 11 and Flight 175 Master Liability Complaints, *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, *World Trade Center Properties, LLC, et al. v. American Airlines, Inc., et al.*, 1:21-mc-00097-AKH (S.D.N.Y. Sept. 2, 2004).  (Burke Decl., Exs. N and O).  The WTCP Plaintiffs claimed that these tort damages were in excess of $10 billion.  *See* WTCP Plaintiffs' Damages Disclosure Form (Burke Decl., Ex. F).  In 2008, the Court ruled that the WTCP Plaintiffs' claim in the Recovery Action was limited to the fair market value of the property as of September 11, 2001, and held that the consideration provided by the Silverstein-controlled entities in July of 2001 – $2.805 billion – was the "best evidence" of the fair market value on the date of destruction.  *See* Op. Granting in Part and Den. in Part Mot. for Summ. J. regarding Damages at 15, 21, Dec. 10, 2008, ECF No. 677 (Burke Decl., Ex. G).

C.     **This Court's April 29, 2009 Order**

The Court allowed the WTCP Plaintiffs to submit additional record evidence concerning fair market value.  Following a further submission by the WTCP Plaintiffs, the Court ruled that $2.805 billion was the maximum recovery possible by the WTCP Plaintiffs against the Aviation

-5-

Defendants.  *See* Order Reclassifying and Den. World Trade Center Properties Pls.' Mot. for

Recons. at 6, Apr. 29, 2009, ECF No. 793 (Burke Decl., Ex. H).

### D.     This Court's August 13, 2009 Order

Following these decisions, the WTCP Plaintiffs moved to dismiss the claims of the

London Underwriters and other subrogating insurers in the Recovery Action.  *See* WTC Pls.'

Mem. of Law in Supp. of Mot. for Summ. J. Dismissing All Subrogation Claims, filed Feb. 17,

2009, ECF No. 728.  Relying on CPLR § 4545, the WTCP Plaintiffs claimed that the subrogating

insurers were "competing claimants to a limited fund" of liability insurance held by the Aviation

Defendants (*id*. at 3), and that subrogation is not permitted until "the loss of the principal has

been paid in full" (*id*. at 5 n.3).

The Court denied the WTCP Plaintiffs' motion, holding that New York law does not

permit duplicate recoveries against a tortfeasor and that a "single loss may be divided into the

separate claims of an insured plaintiff and its subrogated insurer."  Op. and Order Den. Mots. to

Dismiss All Claims of Subrogated Insurers, Aug. 13, 2009, ECF No. 873, at 2 n.2 (Burke Decl.,

Ex. I).  The Court stated that the insureds and subrogating insurers are correctly viewed as "two

sets of parties [that] are both plaintiffs, suing common defendants in separate actions" (*id*. at 7):

> If the insured's loss exceeds the proceeds of its insurance, both it
> and its subrogated insurer may bring suit against the tortfeasor, as
> the claims of the insurer for amounts paid by it and the insured's
> claim for uninsured losses are divisible and independent, and
> permitting the insurer to sue . . . as equitable subrogee does not
> affect the insured's right to sue for the amount of the loss
> remaining unreimbursed.

*Id*. at 10, citing *Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 581 (1995) (internal

quotations omitted), quoting *Fed. Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 374 (1990).

The Court concluded that CPLR § 4545 did not bar the tort claims of the subrogating insurers

against the Aviation Defendants based on the insurance limits they paid.  *Id.* at 13-14.

-6-

**E.      The London Underwriters' Settlement with the Aviation Defendants**

Beginning in 2008, Judge Martin oversaw the complex process of attempting to reach stipulations as to the amount of legally recoverable tort loss or damage for which the Aviation Defendants were potentially liable in the Recovery Action.  *See* Stipulated Order at 2-5, May 22, 2008, ECF No. 478 (Burke Decl., Ex. J).  Judge Martin then served as the mediator in the case, including a successful negotiation between and among the Aviation Defendants and all subrogating insurers.  These parties reached an agreement in February 2010 to resolve all subrogated tort claims for amounts the insurers paid to their insureds, including the WTCP Plaintiffs.  The total settlement with the subrogating insurers was $1.2 billion, with the London Underwriters being allocated 11.5692759% for payments made to all of their insureds.  The portion of the London Underwriters' settlement relating to the claims they pursued in subrogation for insurance payments made to the WTCP Plaintiffs was later stipulated to be $35,382,323.37.[7]

**F.      The WTCP Plaintiffs' Challenge to the Subrogating Insurers' Settlement**

The WTCP Plaintiffs – alone among all other insureds – sought to block the subrogating insurers from recovering anything from this settlement.  Among other unfounded accusations, the WTCP Plaintiffs alleged collusion among insurers who "devised a scheme to give insurer subrogee plaintiffs priority over the [WTCP Plaintiffs]" and argued that "fairness precepts preclude certain of the WTCP Plaintiffs' subrogated insurers from depleting defendants' limited funds before the WTCP Plaintiffs have resolved their claims or otherwise been made whole."  Mem. of Law in Opp. to Joint Mot. for Orders Approving the Settlement Agreement Among the

---

[7] The WTCP Plaintiffs and the London Underwriters jointly agreed that this is the maximum portion of the London Underwriters' settlement with the Aviation Defendants that the WTCP Plaintiffs may claim.  *See* Letter dated June 23, 2011 from Tyrone R. Childress to Kenneth W. Erickson and Matthew M. Burke (Burke Decl., Ex. K).

Aviation Defendants and the Settling Plaintiffs and in Support of Cross-Motion For a

Preliminary Injunction, filed April 16, 2010, at 8, 16 n.10.

This Court rejected the WTCP Plaintiffs' opposition and approved the proposed

settlement as submitted.  *See* Order and Op. Granting Joint Mot. Approving Property Damage

Settlements, July 1, 2010, ECF No. 1199 (Burke Decl., Ex. L).  With respect to the WTCP

Plaintiffs' argument regarding "made whole," the Court held:

> [The WTCP Plaintiffs] rely on *Fasso v. Doerr*, in which the New
> York Court of Appeals noted that "[i]f the sources of recovery
> ultimately available are inadequate to fully compensate the insured
> for its losses, then the insurer – who has been paid by the insured
> to assume the risk of loss – has no right to share in the proceeds of
> the insured's recovery from the tortfeasor."  This, however, is not
> the case here. The subrogated insurers are not sharing in proceeds
> received by, or owed to, the WTCP Plaintiffs.  The WTCP
> Plaintiffs have yet to establish entitlement to any recovery from the
> Aviation Defendants.

*Id*. at 15 n.9 (quoting *Fasso v. Doerr*, 12 N.Y.3d 80, 87 (2009) (internal citation omitted).  After

the Second Circuit affirmed the Court's ruling, *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*,

650 F.3d 145 (2d Cir. 2011), the Aviation Defendants paid the approved settlement amount to

the London Underwriters and the other subrogating insurers in 2011.

### G.    The WTCP Plaintiffs' Claims in the Recovery Action

Notwithstanding the Court's earlier rulings, the WTCP Plaintiffs continue to assert that

they have "uncompensated losses" recoverable in tort from the Aviation Defendants.  The

Aviation Defendants recently filed a renewed motion for setoff of insurance proceeds received

and for summary judgment on the basis that the WTCP Plaintiffs have no legally recoverable tort

loss or damage that exceeds the insurance recovery they already received.  *See* The Aviation

Defendants' Renewed Motion for Collateral Setoff Against WTCP's Claims Pursuant to N.Y.

CPLR § 4545(c) and for Summary Judgment Dismissing WTCP's Damages Claims, Nov. 9,

2011, ECF No. 1570.  Even if the WTCP Plaintiffs were able to persuade this Court that they have legally recoverable tort loss or damage in excess of the insurance proceeds they already received, the WTCP Plaintiffs would be obligated to collect that amount from the Aviation Defendants' remaining liability insurance limits.

## III.     THE WTCP PLAINTIFFS' DECLARATORY JUDGMENT ACTION

In March 2010, the WTCP Plaintiffs filed this separate action against the London Underwriters and certain other subrogating insurers alleging that they were entitled to take away the settlement proceeds to be received by the London Underwriters as a result of their settlement in the Recovery Action.  *World Trade Ctr. Props., LLC, et al. v. Great Lakes Reinsurance (UK) PLC*, *et al.*, No. 10-cv-1642-AKH (S.D.N.Y. filed Mar. 1, 2010).  The WTCP Plaintiffs assert that the $4.091 billion in insurance payments "have not been nearly enough to make the WTCP Plaintiffs whole, that is, to place the WTCP Plaintiffs in the economic position that they would have been in but for the Aviation Defendants' tortious conduct."  First Amended Compl. ¶ 3, May 6, 2010, ECF No. 1157 (Burke Decl., Ex. M).  The WTCP Plaintiffs allege that the subrogation provision in the WilProp policy wording gives them the right to take away the settlement proceeds.  *Id.* at ¶ 31.

## ARGUMENT

As the party asserting the right to take away $35.4 million from the London Underwriters, the WTCP Plaintiffs bear the burden of proof.  *See*, *e.g.*, *Schoeps v. Museum of Modern Art*, 594 F. Supp. 2d 461, 463 (S.D.N.Y. 2009) ("burden of proof rests on the party who would bear it if the action were brought in due course as a claim for non-declaratory relief").  The WTCP Plaintiffs cannot meet this burden because the plain meaning of the WilProp subrogation provision and this Court's prior rulings in the Recovery Action preclude the WTCP

Plaintiffs from receiving any of the proceeds from the London Underwriters' settlement with the Aviation Defendants.

Under familiar standards, the interpretation of a written contract is a matter of law for the Court. *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d. Cir. 1996); *see also United States Trust Co. of N.Y. v. Jenner*, 168 F.3d 630, 632 (2d. Cir. 1999) (noting contractual language is not ambiguous simply because parties offer different interpretations in litigation). Terms within a contract are to be given their plain meaning. *Ocean Partners, LLC v. North River Ins. Co.*, 546 F. Supp. 2d 101, 104 (S.D.N.Y. 2008). The Court is to read the contract in a consistent and reasonable manner, giving effect to all provisions. *Dapuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714, 729 (S.D.N.Y. 2003); *Hamilton v. Khalife*, 735 N.Y.S.2d 564, 566 (N.Y. App. Div. 2001). No interpretation should be adopted that is unreasonable in the circumstances or would render contract terms meaningless. *Zurich Am. Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158, 165 (2d. Cir. 2005).

## I.   NEW YORK SUBROGATION LAW PERMITS INSURERS TO RECOVER FROM A THIRD-PARTY TORTFEASOR FOLLOWING PAYMENT TO AN INSURED

The WTCP Plaintiffs' Complaint must be addressed within the subrogation context in which it arises. The London Underwriters' claims against the Aviation Defendants were based in tort. In New York, as elsewhere, an insurer who pays the insured for some or all of its loss is entitled at common law to bring such an action to the extent of the payment made. 4 Couch, Insurance 3d § 61:4. The insurer is said to be subrogated by its payment to pursue a recovery from the tortfeasor that the insured – having received that insurance payment – is precluded from recovering again under New York law. *See* CPLR § 4545.

The New York Court of Appeals expressly recognizes that an insurer who pays a claim may pursue such an action against the tortfeasor regardless of whether the insured later brings its

-10-

own tort action seeking recovery of its *uninsured* loss.  *Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 581-582 (1995).  In *Winkelmann*, the insured attempted to block the insurer from pursuing and obtaining its tort recovery.  The Court of Appeals rejected that effort, holding that the insurer has an independent right and cannot be precluded because the insured is pursuing recovery for a different interest.  *Id.* at 584.  This Court recognized these principles when it ruled in the Recovery Action that CPLR § 4545 precluded the WTCP Plaintiffs from blocking the subrogating insurers' efforts to recover the insurance payments they made from the Aviation Defendants.  *See supra* at 6.

An insurer's right to pursue subrogation recovery in tort exists at common law and may also be provided by contract.  *SR International Bus. Ins. Co., Ltd. v. World Trade Ctr. Props. LLC*, Nos. 01CV9291 (HB), 02CV0017 (HB), 2008 WL 2358882 (S.D.N.Y. June 10, 2008), *aff'd* 343 F.App'x 629 (2d Cir. 2009).  That contract must fit within controlling legal principles, including the requirement that any subrogation action and recovery is limited to legally recoverable tort loss or damage.

## II.   THE WILPROP SUBROGATION PROVISION UNAMBIGUOUSLY REFERS TO LEGALLY RECOVERABLE TORT LOSS OR DAMAGE

The WTCP Plaintiffs claim the right to take away the hard-earned proceeds of the London Underwriters' settlement based on a few selected words from the subrogation provision in the WilProp form.  In their Complaint, the WTCP Plaintiffs argue that they are entitled to any recovery by the London Underwriters "as long as the WTCP Plaintiffs have uninsured losses." First Am. Compl. at ¶ 31 (Burke Decl., Ex. M).  This claim incorrectly assumes that the phrase "uninsured loss or damage" refers not to any tort loss or damage recoverable from the Aviation Defendants, but to the insurance contract measurement of coverage, such as "replacement cost." This position fails under the plain terms of the subrogation provision in the WilProp form, the

subrogation context to which it applies, and this Court's prior decisions, all of which plainly show that this phrase refers to legally recoverable tort loss or damage from responsible third parties.

### A.     The Phrase "Uninsured Loss or Damage" Means Legally Recoverable Tort Loss or Damage

The WilProp subrogation provision provides as follows:

**SUBROGATION**

1.     In the event of any payment under this policy, the Insurer, where legally permitted and where loss payments under the primary insurance are not detrimentally affected, shall be subrogated to the extent of such payment to all the Insured's rights of recovery thereof.  The insured shall execute all papers required and shall do anything that may be necessary at the expense of the Insurer to secure such right.  The Insurer will act in concert with all other interests concerned, i.e., the Insured and any other Insurer(s) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.  If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be distributed first to the Insured in reimbursement for the deductible amount retained and for any uninsured loss or damage resulting from the exhaustion of limits under this policy or primary or excess policy(ies).  The balance shall be divided between the remaining interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

WilProp at § VII(B)(1), Ex.1 to First Amended Complaint (Burke Decl., Ex. M).

For their claim to survive, the WTCP Plaintiffs must establish that (1) they sustained compensable "loss or damage" to their property for which they have the legal right to recover from the Aviation Defendants and (2) such "loss or damage" was uninsured as a result of the exhaustion of limits "under this policy or primary or excess policy(ies)."  The phrase "loss or damage" in this subrogation provision unambiguously refers to the WTCP Plaintiffs' legally recoverable loss or damage, which can only be those losses or damages that could be recovered

in a tort claim against the Aviation Defendants.  This plain reading is reinforced by express reference to actions against third-party wrongdoers – "any amount is recovered as a result of such proceedings."   It is theoretically possible – though not shown by the WTCP Plaintiffs in the Recovery Action – that an insured could have an amount of legally recoverable tort loss or damage due from a third-party wrongdoer that is in excess of its insurance.  That possibility is expressly recognized by the phrase "uninsured loss or damage resulting from the exhaustion of limits."  And it is also theoretically possible – though not shown by the WTCP Plaintiffs in the Recovery Action – that the third party has insufficient resources to pay the legally recoverable tort loss or damage it owes the insured.  If both of those conditions and the other requirements of the subrogation provision were satisfied, then the portion of the WilProp subrogation provision on which the WTCP Plaintiffs rely affords them priority based on any legally recoverable tort loss or damage that the Aviation Defendants owe and cannot pay.

   None of those requirements is met in this case:

- This Court earlier determined that the legally recoverable tort loss or damage is the fair market value of the net lease acquired by the WTCP Plaintiffs in 2001and that such fair market value was $2.805 billion, which is far less than the $4.1 billion in insurance recoveries paid to the WTCP Plaintiffs.

- CPLR § 4545 precludes an insured from recovering any amount of tort loss or damage it already has been paid by its insurers.

- If the WTCP Plaintiffs fail to establish tort loss or damage that is legally recoverable from the Aviation Defendants, then the WilProp subrogation provision does not apply.

- Even if the WTCP Plaintiffs were to establish that the Aviation Defendants are liable to them for legally recoverable tort loss or damage in excess of $4.1 billion, the WTCP Plaintiffs also must establish that the Aviation Defendants' remaining liability insurance limits are inadequate to pay that liability before the WilProp subrogation provision would apply.

- To allow the WTCP Plaintiffs otherwise to take away the London Underwriters settlement with the Aviation Defendants of legally recoverable tort loss or damage would allow indirectly what CPLR § 4545 prohibits as a double payment for the same loss or damage.

Within this legal framework, the contracting parties may agree to a particular formula for allocating any amount that qualifies for allocation. The Second Circuit and the New York Court of Appeals have long recognized that the "made whole" tort doctrine is a default rule that allocates legally recoverable tort loss or damage due from a third party that the insured cannot collect from the tortfeasor. *See Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*, Docket No. 10-0797-cv, 2011 WL 1601993 (2d. Cir. Apr. 29, 2011); *Fasso v. Doerr*, 12 N.Y.3d 80 (2009); *Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 581-82 (1995). This default rule does not in any way limit the insurer's right to proceed after paying its obligation to the insured and to obtain an individual recovery from the tortfeasor. *See Winkelmann*, 85 N.Y.2d at 581-82. The parties may agree that the insurer has priority where the tortfeasor has insufficient resources to pay the insured its legally recoverable tort loss or damage excess of the insurance limits, *see SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props. LLC*, Nos. 01CV9291 (HB), 02CV0017 (HB), 2008 WL 2358882 (S.D.N.Y. June 10, 2008), *aff'd* 343 F.App'x 629 (2d Cir. 2009), or that the parties will apply in that instance a sharing formula. *See* IRI's CAR Policy at § IV.C, Ex. 2 to First Amended Complaint. Significantly, research does not yield any decision in the substantial body of subrogation case law where an insured is permitted under either "made whole" or a contractual subrogation provision to take away an insurer's subrogation recovery even though the insured has not established (i) that it has any legally recoverable tort loss or damage from a tortfeasor, and (ii) that the tortfeasor has insufficient assets to satisfy that obligation. Yet that is precisely what the WTCP Plaintiffs propose in their Complaint and cannot establish as a matter of law.

The WTCP Plaintiffs run from this reality by trying to give the subrogation provision an unreasonable reading that goes beyond the facts of the Recovery Action. It is beyond question,

however, that the actions brought by the London Underwriters and the WTCP Plaintiffs against the Aviation Defendants sound only in tort and must be judged on that basis.  Indeed, the London Underwriters and Aviation Defendants engaged in a detailed supervised process to limit the claims at issue only to legally recoverable tort damages.  *See* Stipulated Order at 2-5, May 22, 2008, ECF No. 478 (Burke Decl., Ex. K).  In these circumstances, the outcome is not affected in any way by the WTCP Plaintiffs recycling their failed argument against the Aviation Defendants that recovery rights are measured by "replacement cost" for the property.  This Court has already ruled that the WTCP Plaintiffs' recovery rights are based on the fair market value of the net leased properties, not on replacement cost.  *See supra* at 5-6.  This fact is reflected in the wording of the WilProp subrogation provision, which refers *only* to potential recoveries from third parties and says nothing about replacement cost or any contract measurement of loss or damage.  Read plainly, the phrase "resulting from the exhaustion of limits" identifies a circumstance in which an insured could obtain a priority right, not how that right is determined.  For example, the provision could not provide priority where an insured settles with the insurer for less than policy limits and then claims that it has legally recoverable tort loss or damages due from a tortfeasor who cannot pay.  The reference to exhaustion of limits does not modify or bear on the meaning of what constitutes "uninsured loss or damage."  It is merely a prerequisite to having a potential priority right where the insured has experienced "uninsured loss or damage" that is legally recoverable from a tortfeasor.

The WTCP Plaintiffs' strained and unreasonable reading runs afoul of basic rules of contract construction.  The language at issue must be read in the context in which it appears.  *See Allendale Mut. Ins. Co. v. Excess Ins. Co., Ltd.*, 992 F. Supp. 271, 274 (S.D.N.Y. 1997). ("fundamental contract law requires the parties' intent to be discerned by reading the contract as

a whole, and by considering all its clauses together to determine if and to what extent one may modify, explain or limit another").  The provision relied upon by the WTCP Plaintiffs is within the subrogation section of the contract and must be read in a manner consistent with the well-established principles of subrogation law.  Central to these principles is the limitation of an insured's recovery to its uninsured legally recoverable damages and the avoidance of any windfall to the insured by payments from both insurer and tortfeasor for the same loss or damage.

All words in a contract must be given their natural meaning.  *See Rothenberg v. Lincoln Farm Camp., Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985) ("[A]n interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect."); *Two Guys from Harrison- N.Y., Inc. v. S.F.R. Realty Assoc.*, 472 N.E.2d 315, 318 (N.Y. 1984) ("In construing a contract, one of the court's goals is to avoid an interpretation that would leave contractual clauses meaningless.").  The WTCP Plaintiffs' reading fails to give meaning to all of the policy terms by providing the insured with additional insurance coverage without payment of a premium.  If the WTCP Plaintiffs have priority over subrogation recoveries to the extent of the contractual measure of damages regardless of the policy limit or their uninsured tort damages, the insured is receiving the benefit of coverage for which it had the option of purchasing, but chose not to.  This interpretation negates the policy limit.  New York case law consistently rejects such distortions of plain contractual language.  *See, e.g., Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010) ("parties are not free to interpret a contract in a way that frustrates the purpose of that contract or that makes any provision of the contract meaningless"); *Currier, McCabe & Assocs., Inc. v. Maher*, 906 N.Y.S.2d 129, 132 (N.Y. App. Div. 2010) (a contractual

-16-

provision should not be interpreted in a way that leads to "absurd and self-contradictory" results).

### B.      The Subrogation Context In Which This Issue Arises Confirms The Plain Meaning of the WilProp Subrogation Provision

The WTCP Plaintiffs' reading of the WilProp subrogation provision also is inconsistent with the common law "made whole" doctrine discussed above.  In *Fasso v. Doerr*, 12 N.Y.3d 80, 87 (2009), the New York Court of Appeals addressed separate actions by an insured and an insurer against the same tortfeasor and explained that "made whole" refers to the insured's right to receive an amount legally recoverable in tort from the tortfeasor's assets.  *See id*. at 87-88 (made-whole doctrine not an impediment to "insurer's right to seek recoupment from the tortfeasor because the settlement . . .  left a potential source of recovery – $1.1 million in remaining insurance coverage").  Neither requirement pertains in the Recovery Action where (i) the Aviation Defendants maintain that the WTCP Plaintiffs have been fully paid and cannot recover more and (ii) the Aviation Defendants have remaining liability insurance limits available to pay any judgment for the WTCP Plaintiffs.  Under either scenario, the WTCP Plaintiffs are "made whole," and are entitled to no part of their insurers' subrogated recovery.  *See Winkelmann*, 85 N.Y.2d at 581-82.

The law in New York on this issue mirrors that of other states.  In *Veazey v. Allstate Tex. Lloyds*, a federal court in Texas rejected the insureds' attempt to claim their insurers' subrogation recovery from the tortfeasor:

> Plaintiffs' claim is simply untenable, because Plaintiffs are, in essence, seeking to recover from their insurance company payments exceeding the limits of their policy.  Plaintiffs cite no authority for the proposition that insureds who are not made whole may seek additional compensation from their insurer for damages above and beyond the policy limits. . . . Plaintiffs in this case chose to bear a tremendous risk of loss by carrying only $1.3 million

-17-

> worth of insurance on a property that would cost more than $9
> million to restore if destroyed.

No. 3:04-CV-182-L, 2007 WL 29239, at *6 (N.D. Tex. Jan.3, 2007).  In *Norman v. White Consolidated Indus., Inc*., Appeal No. 01-A-01-9205-CV-00205, 1992 Tenn. App. LEXIS 744, at *6-7 (Tenn. Ct. App. Aug. 26, 1992), after a jury determined that the insured's total damages were less than the amount already paid by the insurer, the insured was found to have been "made whole" and the insurer retained the balance.  And in *Fischer v. Steffen*, the court held that the insured did not have any right to the subrogating insurer's independent claim against the tortfeasor and the insured could not argue "made whole" following a determination that its recoverable damages were less than the tortfeasor's assets available to satisfy the judgment.  797 N.W.2d 501, 504-05 (Wis. 2011).  These decisions uniformly describe "made whole" as a concept based on legally recoverable tort loss or damage from liable third parties.

While the subrogation provisions at issue vary in some allocation details where all requirements are met, none of them overlook the prerequisites of the "made whole" doctrine or support the WTCP Plaintiffs' unreasonable reading.  And to the extent that the WTCP Plaintiffs claim that the WilProp provision rewrites or abandons the "made whole" prerequisites, they bear the burden of establishing that this was done by "clear and explicit" language.  *SR Int'l Bus. Ins. Co. Ltd., v. World Trade Ctr. Props. LLC*, Nos. 01CV9291(HB), 02CV0017(HB), 2008 WL 2358882, at *11 (S.D.N.Y. June 10, 2008).  As detailed above, there is nothing in the plain meaning of the WilProp subrogation provision that supports the WTCP Plaintiffs' interpretation, much less changes the requisites and meaning of the "made whole" doctrine.

## III.   THE WTCP PLAINTIFFS' POSITION PRODUCES NONSENSICAL RESULTS

The illogical and impermissible effect of the WTCP Plaintiffs' position confirms that the plain meaning of the WilProp subrogation provision requires uninsured legally recoverable

damages.  Under the WTCP Plaintiffs' interpretation, the insured has the right to take away a settlement that a subrogating insurer has obtained with a tortfeasor regardless of the existence of uninsured damages.  Such a result is contrary to the ban on double recovery under CPLR § 4545.  An insured-claimant cannot recover more from the tortfeasor where the recoverable loss has been paid by its insurer(s).  Likewise, an insured cannot claim any shortfall unless the assets of the tortfeasor are inadequate to pay any judgment the insured obtains for recoverable loss in excess of the insurance paid.  The WTCP Plaintiffs' claim directly contravenes CPLR § 4545, permitting the insured to recover twice for the same part of its loss.  *See, e.g., Hayes v. Normandie LLC*, Index No. 105343/99, 2002 N.Y. Slip. Op. 40311U, 7, 2002 WL 1748675, at *4 (N.Y. App. Div. June 6, 2002), *aff'd as modified by* 761 N.Y.S.2d 645 (N.Y. App. Div. 2003) ("The purpose of the collateral source rule is simply to eliminate double recoveries for the plaintiff."); *see also, Martin v. Martin*, 5 A.D.2d 307, 309 (N.Y. App. Div. 1958) ("public policy" precludes enforcement of contract "in violation of statute").  In short, the WTCP Plaintiffs are seeking to end-run CPLR § 4545 and this Court's prior decisions.

The result advocated by the WTCP Plaintiffs also eliminates rational incentive for an insurer to pursue subrogation.  Under the WTCP Plaintiffs' reading, an insurer would not pursue the cost and burden of a subrogation action – which in this instance took seven years of hard endeavor – knowing that whatever is recovered would be taken away by the insured.  Either the insurer would never bring a subrogation action against the tortfeasor – allowing the wrongdoer to escape from a liability the insured could never claim – or the insurer bringing such a suit would never settle knowing that it would receive nothing except in the unlikely event of being awarded a complete recovery.  Sophisticated commercial parties would never have agreed to such terms, which also run counter to the strong public policy favoring settlements.

**IV.   THE WILPROP SUBROGATION PROVISION APPLIES ONLY TO JOINT RECOVERY ACTIONS**

The London Underwriters established above that the WTCP Plaintiffs are not entitled to any portion of their settlement with the Aviation Defendants under the distribution clause in the WilProp subrogation provision.  The other terms of the WilProp subrogation provision provide independent grounds for the conclusion that it does not apply in the current circumstances. These terms require, as a prerequisite to any recovery by the WTCP Plaintiffs, that the parties act "in concert."  By its terms, the subrogation provision envisions a joint recovery action against a third party, where a subrogating insurer acts together with an insured that is pursuing its claim to any legally recoverable damages that have not been paid by the insurer.  The WilProp subrogation provision sets forth the following requirements for the wording to apply:

- **Insurer's Right To Sue in Tort**.  Where "legally permitted" the insurer "shall be subrogated to the extent of such payment" as it makes under the policy.

- **Insured's Duty to Support Insurer**. The insured shall sign papers and "do anything that may be necessary. . . to secure such right" of the insurer to pursue the tortfeasor in subrogation.

- **Action in Concert**.  All interests will "act in concert . . . in the exercise of such rights of recovery."

- **Distribution Where Acting in Concert**.  If "any amount is recovered as result of such proceedings," the balance after deducting costs of recovery "shall be distributed first to the Insured" to reimburse any deductible for which it was not paid by the insurer and for any "uninsured loss or damage" resulting from the exhaustion of insurance limits.

- **Remaining In Concert Interests**.  The balance is divided evenly among "the remaining interests concerned in the proportion of their respective interests."

- **Sharing of Costs**.  If the costs of obtaining the recovery are not otherwise accounted for, they "shall be borne proportionately by the interests instituting the proceedings."

Read as written, the distribution clause applies to those circumstances where the insurer(s) and the insured *jointly* pursue a tortfeasor and obtain a recovery by settlement or judgment that must

-20-

be allocated between them.  This is reflected in the "do anything," "in concert," and shared costs requirements.

None of these prerequisites were met in the Recovery Action, and in fact the exact opposite occurred, with the WTCP Plaintiffs opposing the London Underwriters' recovery efforts at every turn.  When approached, the WTCP Plaintiffs declined the London Underwriters' attempts to pursue claims jointly.  *See supra* at n.6.  Once the Recovery Action was underway, the WTCP Plaintiffs made every effort to hinder the London Underwriters' pursuit of their subrogation claims – first seeking to preclude the claims under CPLR § 4545 (*id*. at 6) and then attempting to block the subrogating insurers' settlement with the Aviation Defendants (*id*. at 7-8).  These circumstances were the antithesis of a joint recovery action, and the stated requirements for the priority claim the WTCP Plaintiffs advance are not satisfied in this action.  The WTCP Plaintiffs cannot now claim any right to share in the recovery that they affirmatively opposed.

## **CONCLUSION**

Based on the foregoing points and authorities, the WilProp subrogation wording clearly sets forth the requirements for any allocation of legally recoverable tort loss or damage.  Based on this Court's prior rulings and New York law concerning CPLR § 4545 and the "made whole" doctrine, there is no basis for the WTCP Plaintiffs' flawed effort to take away the $35.4 million the London Underwriters recovered in settlement from the Aviation Defendants.  Accordingly, the London Underwriters respectfully request that the Court enter summary judgment in their favor.

28728297_1

Dated: December 5, 2011          Respectfully submitted,

*/s/ Matthew M. Burke*
David J. Przygoda
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Phone: (212) 841-0496
Fax: (646) 728-1597
David.Przygoda@ropesgray.com

Kenneth W. Erickson (admitted pro hac vice)
Matthew M. Burke (admitted pro hac vice)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Phone: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for London Underwriters*

-22-

28728297_1