**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
:
:
WORLD TRADE CENTER PROPERTIES LLC, 1 :
WORLD TRADE CENTER LLC, 2 WORLD :
TRADE CENTER LLC, 3 WORLD TRADE :
CENTER LLC, and 4 WORLD TRADE CENTER :
LLC, :      Case No.:  10-CV-1642 (AKH)
:
                Plaintiffs, :
:      This action relates to:
       -against- :      In re September 11 Litigation,
:      21 MC 101 (AKH)
:
GREAT LAKES REINSURANCE (UK) PLC, :
CERTAIN UNDERWRITERS AT LLOYD'S, :
LONDON SYNDICATES NUMBERED 33, 1003, :
2003, 1208, 1243, 0376, 1225, 1212, 79, 506, 2791, :
QBE INSURANCE (EUROPE) LTD. F/K/A QBE :
INTERNATIONAL INSURANCE LTD., and :
INDUSTRIAL RISK INSURERS, :
:
                Defendants. :
-------------------------------------------------------------x

## MEMORANDUM OF LAW
## OF DEFENDANT INDUSTRIAL RISK INSURERS IN SUPPORT OF ITS MOTION
## FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

    *A. Plaintiffs Receive $4.091 Billion from Their Insurers for Losses Associated with the Destruction of the World Trade Center* ............................................ 4

    *B. IRI Initiates a Subrogation Action Against the Aviation Defendants to Recoup a Portion of the ▮▮▮▮▮▮▮ It Paid Plaintiffs* ..................................................... 6

    *C. After Briefing and Oral Argument This Court Rules that Plaintiffs' Tort Damages are Capped at $2.805 Billion, the Fair Market Value of the WTC Complex Leaseholds on September 11, 2001* .......................................................... 9

    *D. Having Failed to Thwart the Subrogation Settlement, By this Declaratory Judgment Action WTCP Now Seeks to Obtain a Share of IRI's Subrogation Recovery* ............................................................................................ 10

STANDARD ..................................................................................................................... 10

ARGUMENT ..................................................................................................................... 11

**I. PLAINTIFFS ARE NOT ENTITLED TO ANY PORTION OF IRI'S SUBROGATION RECOVERY BECAUSE, IN CLEAR VIOLATION OF THE TERMS OF THEIR POLICY, PLAINTIFFS PREJUDICED IRI'S EFFORTS TO MAKE SUCH A RECOVERY** ...................................................... 11

**II. PLAINTIFFS ARE COLLATERALLY ESTOPPED FROM ARGUING THAT THEIR "PROVABLE LOSS" EXCEEDS $2.805 BILLION AND HAVE ALREADY BEEN PAID WELL IN EXCESS OF THAT AMOUNT BY THEIR INSURERS** ............................................................................. 13

CONCLUSION .................................................................................................................. 22

## TABLE OF AUTHORITIES

### Cases

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109 (2d Cir. 2005) ........................................................ 15, 19

*Allstate Ins. Co. v. Stein*, 1 N.Y.3d 416 (2004) ............................................................................ 11

*Amusement Consultants, Ltd. v. Hartford Life Ins. Co.*, 625 N.Y.S.2d 901 (1st
    Dept 1995) ...................................................................................................................... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 11

*Bartunek v. Geo. A. Hormel & Co.*, 513 N.W. 2d 545 (Neb. Ct. App. 1994) .............................. 17

*Berry v. St. Peter's Hosp.*, 678 N.Y.S.2d 674 (3d Dept 1998) ..................................................... 17

*Bretton v. Mutual of Omaha Ins. Co.*, 492 N.Y.S.2d 760 (1st Dept 1985) ................................... 18

*City of New York v. 17 Vista Associates*, 599 N.Y.S.2d 549 (1st Dept 1993) .............................. 18

*Fisher v. Qualico Contracting Corp.*, 98 N.Y.2d 534 (2002) ........................................................ 9

*Freight Drivers v. Cleveland, Columbus & Cincinnati Highway, Inc.*, No. CIV-
    85-810E, 1988 WL 84166 (W.D.N.Y. Aug. 9, 1988) .................................................. 20, 21

*Global Int'l Marine, Inc. v. US United Ocean Servs., LLC*, No. 09-6233, 2011
    WL 2550624 (E.D. La. June 27, 2011) ............................................................................ 16

*Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608 (2d Cir. 2001) ............................... 16

*In re September 11 Litig.*, 649 F. Supp. 2d 171 (S.D.N.Y. 2009) ..................................... 7, 13, 15

*In re September 11 Litig.*, 723 F. Supp. 2d 534 (S.D.N.Y. 2010) ...................................... 7, 8, 14

*In re September 11 Litig.*, No. 21 MC 101 (AKH), 2009 WL 1181057 (S.D.N.Y.
    Apr. 30, 2009) ............................................................................................................ 10, 14, 20

*In re September 11 Litig.*, No. 21 MC 101 (AKH), 2009 WL 2058385 (S.D.N.Y.
    May 26, 2009) ................................................................................................................... 20

*In re September 11 Prop. Damage Litig.*, 650 F.3d 145 (2d Cir. 2011) ......................................... 8

*In re September 11th Litig.*, 590 F. Supp. 2d 535 (S.D.N.Y. 2008) ....................................... passim

*Interested Underwriters at Lloyds v. Third Holding Corp.*, 88 A.D.2d 863 (1st
    Dept. 1982) ........................................................................................................................ 16

*Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80 (2d Cir. 1961), *cert denied*, 368 U.S. 986 (1962) .................................................................................... 19, 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................................... 10

*Mazzaferro v. RLI Ins. Co.*, 50 F.3d 137 (2d Cir. 1995)............................................................. 15

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992), *abrogated on other grounds as recognized in Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005) .......................... 19, 21

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)................................................................... 19

*Pontiac Mut. County Fire & Lightning Ins. Co. v. Sheibley*, 279 Ill. 118 (1917) ........................ 17

*Reape v. New York News, Inc.*, 504 N.Y.S.2d 469 (2d Dept 1986)........................................ 18, 19

*Sirignano v. Chicago Ins. Co.*, 192 F. Supp. 2d 199 (S.D.N.Y. 2002)......................................... 16

*SR Int'l Bus. Ins. Co. v. World Trade Center Props. LLC*, No. 01 CV 9291 (HB), 2008 WL 2358882 (S.D.N.Y. June 10, 2008), *aff'd, SR Int'l Bus. Ins. Co. v. Allianz Ins. Co.*, 343 Fed. Appx. 629 (2d Cir. 2009) ................................................. 4, 15

*Tampa Port Auth. v. M/V Duchess*, 65 F. Supp. 2d 1299 (M.D. Fla. 1997), *aff'd*, 184 F.3d 822 (11th Cir. 1999) .................................................................................. 17

*Tropic Pollo I Corp. v. Nat'l Specialty Ins. Co.*, No. 09-cv-1388(DLI), 2011 WL 2712941 (E.D.N.Y. July 8, 2011) .............................................................................. 11, 13

*United Pacific Ins. Co. v. Boyd*, 661 P.2d 987 (Wash. Ct. App. 1983) ........................................ 17

*Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577 (1995)................................................. 12, 15, 18

### Statutes

Air Transportation Safety and System Stabilization Act ("ATSSSA"), 49 U.S.C. § 40101 note............................................................................................................................ 9

### Rules

Fed. R. Civ. P. 56............................................................................................................................. 1, 22

Fed. R. Civ. P. 56(a) ............................................................................................................................ 10

### Other Authorities

Barry R. Ostrager & Thomas R. Newman, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 5.06(c) at 370 (14th ed. 2008) ...................................................................... 15

Defendant-Industrial Risk Insurers ("IRI") respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The facts of this case are simple, undisputed and warrant dismissal of Plaintiffs'[1] Amended Complaint against IRI.

Larry Silverstein, the developer who controls the entities that filed this Action, refuses to accept the simple reality that after receiving $4.091 billion – the full amount of his property insurance policy limits and *more than a billion dollars in excess* of the $2.805 billion he had paid for the leasehold interest of the World Trade Center complex on July 16, 2001 – he has been more than compensated for all loss associated with September 11. Statement of Undisputed Facts ("SUF") at ¶¶ 1, 10. Indeed, Silverstein has spent the better part of the last decade engaged in scorched earth litigation tactics in ever more desperate attempts to escape this reality, and in a continued effort to capitalize on the destruction caused by the September 11 attack. No matter how he phrases the claim or against whom it is asserted, the simple, undisputed fact is that Silverstein has been fully compensated for all losses arising out of September 11. Each time, Silverstein's claims to additional compensation have been soundly rejected by this Court and the Second Circuit as baseless. This Action is no different.

After attempting to frustrate IRI's legitimate contractual subrogation rights to recoup from various airlines, security companies and other aviation entities potentially liable for

---

[1]     The Plaintiffs in this action are World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, and 4 World Trade Center LLC (collectively, "WTCP" or "Plaintiffs" or "Silverstein"). The WTCP Plaintiffs are subsidiaries or affiliates of, or are associated with, owned by or controlled by Silverstein Properties, Inc. and/or Larry Silverstein ("Silverstein").

September 11-related damage (the "Aviation Defendants") a portion of its paid September 11 claims, Silverstein now has the audacity to try – in clear violation of policy terms and well-established concepts of subrogation law – to share in the proceeds IRI received from the agreement it and various other insurers and uninsured loss plaintiffs reached with the Aviation Defendants (the "Subrogation Settlement"). *See* SUF ¶¶ 13, 15, 18.

Under the unambiguous terms of the property policy form on which the IRI coverage was written (the "C-AR policy form"), any subrogation recoveries obtained by IRI are for its own use and account, unless Plaintiffs can establish (i) the subrogation lawsuit was jointly pursued and Silverstein cooperated with IRI; (ii) Silverstein has "***borne [some portion of] the provable loss***" suffered as a result of the September 11 terrorist attack which the subrogation lawsuit sought to recover; and (iii) Silverstein has done "nothing … to prejudice the subrogation rights of [IRI]." *See* SUF ¶ 8. As a matter of law Plaintiffs cannot satisfy any of these elements.

***First***, Plaintiffs' actions, in which they obstructed, prejudiced, and otherwise actively and improperly sought to impair IRI's right to recoup a portion of its paid claims from the Aviation Defendants, violate the clear terms of the policy form on which the IRI coverage was written and, as such, nullify any claim by Plaintiffs to share in IRI's subrogation recovery. For example, Plaintiffs sought at every turn to impede IRI's recovery – to which they now claim entitlement to a portion – by seeking dismissal of its claims and later pressing before this Court and the Second Circuit the sole objection to the Subrogation Settlement. SUF ¶¶ 13, 18, 20.

***Second***, this Court, after extensive litigation involving Plaintiffs and the Aviation Defendants, held that $2.805 billion dollars – the fair market value of the World Trade Center at the time of its destruction – constitutes the full amount of Plaintiffs' tort damages. *See* SUF ¶ 17. This holding collaterally estops Plaintiffs from arguing in this Action that their subrogation-

2

related "provable loss," a term synonymous with tort damages (*i.e.*, the basis for the subrogation recovery), exceeds $2.805 billion. Having received $4.091 billion in insurance proceeds, simple math reveals that Plaintiffs, as a matter of law, have not borne any portion of "the provable loss" on which the subrogation recovery was based, and therefore are not entitled to any of the proceeds IRI received as part of the Subrogation Settlement.

Silverstein is not entitled to one penny of IRI's subrogation proceeds. The $4.091 billion Silverstein has already been paid by his insurers is *more than a billion dollars in excess* of the $2.805 billion he paid for his leasehold interest in the WTC Complex and the amount this Court has held to be the full extent of Plaintiffs' recoverable loss. *See* SUF ¶¶ 10, 17. In light of this simple fact, Silverstein's allegation that he "remain[s] saddled with uninsured losses" (*see* Amended Complaint ¶ 32) approaches frivolity. Silverstein has no contractual right to share in IRI's subrogation proceeds; his own attempts to thwart the very recovery he now seeks extinguished that right. Moreover, the very purpose of subrogation – to prevent the insured from recovering twice for the same harm, while also requiring the party that caused the damage to reimburse the insurer – would be wholly distorted if Silverstein recovered one additional cent from IRI. IRI has already paid Silverstein ███████████████████████████, and thus has satisfied in full its contractual obligations. *See* SUF ¶¶ 5-6. After exhaustion of his property insurance, Silverstein then decided to separately pursue his claims against the Aviation Defendants. *See* SUF ¶ 12. Silverstein cannot now use IRI's subrogation recovery to obtain a recovery to which he would not otherwise be legally entitled. Indeed, Silverstein's claim to a portion of IRI's subrogation recovery would have the perverse result of providing Silverstein with additional insurance coverage that he did not buy and a

3

windfall that is contrary to law.  These undisputed facts, together with the arguments set forth

herein, lead to only one result: dismissal of Plaintiffs' claims is warranted as a matter of law.

## FACTUAL BACKGROUND

As this Court is familiar with the history of this and related cases, IRI sets forth

only the following undisputed facts relevant to this motion.

A.      *Plaintiffs Receive $4.091 Billion from Their Insurers for Losses
        Associated with the Destruction of the World Trade Center*

On July 16, 2001, Plaintiffs paid $2.805 billion to the Port Authority of New York

and New Jersey as consideration for four 99-year net leases for the World Trade Center complex

(the "WTC Complex").  SUF ¶ 1; *see also In re September 11th Litig.*, 590 F. Supp. 2d 535, 536-

37, 547 (S.D.N.Y. 2008) (hereinafter "Recovery Action Order I"), attached as Exhibit A to

Declaration of Mary Kay Vyskocil ("Vyskocil Dec.").  IRI, as well as the other insurer

defendants in this case (the "WilProp Defendants")[2] and other non-party insurers,[3] insured

Plaintiffs' leasehold interest at the WTC Complex.  IRI covered the WTCP Plaintiffs pursuant to

a binder incorporating IRI's Comprehensive All Risk Form ("C-AR").  SUF ¶ 2; *see also*

---

[2]     The WilProp Defendants include Great Lakes Reinsurance (UK) PLC, Certain
        Underwriters at Lloyd's, and QBE Insurance (Europe) Ltd. F/K/A QBE International
        Insurance Ltd.

[3]     Allianz Global Risks US Insurance Company f/k/a Allianz Insurance Company
        ("Allianz") also insured Plaintiffs' property and made payments to Plaintiffs.  Although
        he had no colorable claim to Allianz's subrogation recovery pursuant to a 2008 ruling
        that Allianz was entitled to priority of recovery in third party litigation to the extent of its
        insurance payments to Silverstein, *see SR Int'l Bus. Ins. Co. v. World Trade Center
        Props. LLC*, No. 01 CV 9291 (HB), 2008 WL 2358882, at *12 (S.D.N.Y. June 10, 2008),
        *aff'd, SR Int'l Bus. Ins. Co. v. Allianz Ins. Co.*, 343 Fed. Appx. 629 (2d Cir. 2009)
        (Vyskocil Dec. Exs. B & C), Silverstein nonetheless named Allianz as a defendant in this
        declaratory judgment action.  Plaintiffs subsequently amended the complaint on May 6,
        2010, dropping Allianz as a defendant.

4

Amended Complaint, Ex. 2.[4]  The WilProp Defendants insured the WTCP Plaintiffs pursuant to binders incorporating the terms of the broker-drafted WilProp 2000 Policy Form (the "WilProp form").[5]  SUF ¶ 3; *see also* Amended Complaint, Ex. 1.

Pursuant to their respective policies, IRI, the WilProp Defendants and other insurers collectively paid Plaintiffs $4.091 billion for losses suffered as a result of the September 11 terrorist attack.  SUF ¶ 10; Recovery Action Order I, 590 F. Supp. 2d at 539; Summary Order Regarding Motion for Collateral Setoff and Summary Judgment, 21 MC 101 (AKH) (S.D.N.Y. Sept. 30, 2009) (Vyskocil Dec. Ex. S).  IRI paid Plaintiffs a total of ███████ in connection with the WTC Complex claim.  SUF ¶ 4; *see also* Response to Court Interrogatory.[6]  IRI initially paid Plaintiffs a single-loss policy limit of $237,238,400, but after a jury determined that the September 11 attack constituted two occurrences under the C-AR policy form, IRI and Silverstein entered into a settlement agreement pursuant to which IRI paid Plaintiffs ███ ████████████████  SUF ¶ 5; *see also* Stipulation of Settlement at pp. 3-5.[7]  The Stipulation of Settlement agreement provided that ████████████████████████████ ███████████████████████████████████████████████████

---

[4]     All references herein to "Amended Complaint" refer to First Amended Complaint and Exhibits thereto, *World Trade Center Properties LLC et al. v. Great Lakes Reinsurance (UK) PLC et al.*, No. 10-CV-1642 (AKH) (S.D.N.Y. filed May 6, 2010) (Dkt. No. 57) (Vyskocil Dec. Ex. D).

[5]     The policy language of the WilProp form, and in particular the subrogation language, differs substantially from that of IRI's C-AR policy form.

[6]     All references herein to "Response to Court Interrogatory" refer to Industrial Risk Insurers' Response to Court Interrogatory in this Action, dated June 20, 2011, attached as Exhibit E to Vyskocil Dec.

[7]     All references herein to "Stipulation of Settlement" refer to Stipulation of Settlement between IRI, the WTCP Plaintiffs, and other non-party entities dated June 8, 2007 attached as Exhibit F to Vyskocil Dec.

███████████████████████████████████████████████

████████████████████ SUF ¶ 6; *see also* Stipulation of Settlement ¶¶ 4-6.

Significantly, the parties expressly agreed that ████████████████████████

███████████████████████████████████████████████

████████ SUF ¶ 7; *see also* Stipulation of Settlement ¶ 10.

That subrogation provision, which governs the extent to which Plaintiffs can claim a right to any portion of IRI's subrogation recovery, provides as follows:

> **SUBROGATION** – This insurance shall not be invalidated should the Insured waive by express agreement prior to a loss any or all right of recovery against any party for loss or damage insured against by this policy. *The Insured shall do nothing after a loss to prejudice the subrogation rights of [IRI]. The net amount of any recovery* after deducting the costs of subrogation proceedings shall be divided between *each party instituting such proceedings in the same proportion as each such party has borne the provable loss.*

SUF ¶ 8; *see also* Amended Complaint, Ex. 2 at Section IV(C) (emphasis added).

    *B.*    *IRI Initiates a Subrogation Action Against the Aviation Defendants to Recoup a Portion of the $474,476,800 It Paid Plaintiffs*

Pursuant to their rights as subrogees, IRI, the WilProp Defendants and various other insurers (the "Subrogating Insurers") brought suit against the Aviation Defendants seeking to recoup a portion of all of their September 11 claims payments, including the $4.091 billion paid to Plaintiffs. SUF ¶ 11; *see also Industrial Risk Insurers v. AMR Corp.*, No. 04-CV-7234 (AKH) (S.D.N.Y. filed Sept. 10, 2004), *consolidated into In re September 11 Litig.*, No. 21 MC 101 (AKH) (the "Subrogation Action") (Vyskocil Dec. Ex. G). The WTCP Plaintiffs elected not to join IRI in the Subrogation Action, and instead four years later filed their own suit against the Aviation Defendants (the "Recovery Action") seeking to recover for alleged unreimbursed loss

far in excess of the $4.091 billion they had already received in insurance proceeds.[8]  SUF ¶ 12.

The WTCP Plaintiffs subsequently moved to dismiss the subrogation claims of IRI and other

subrogees.  SUF ¶ 13; *see also* Notice of Motion by WTC Plaintiffs for Summary Judgment

Dismissing All Subrogation Claims, *In re September 11 Litig.*, 21 MC 101 (AKH) (S.D.N.Y.

filed Feb. 17, 2009) (Vyskocil Dec. Ex. L).  Their motion was denied by this Court.  SUF ¶ 14;

*see also In re September 11 Litig.,* 649 F. Supp. 2d 171, 183-84 (S.D.N.Y. 2009) (Vyskocil Dec.

Ex. M).

    After significant pre-trial discovery, the parties to the Recovery Action and

Subrogation Action participated in mediation before the Honorable John S. Martin.  *See* SUF ¶

15.  While the parties in the Subrogation Action worked toward settlement, Judge Martin

concluded, due to the WTCP Plaintiffs' excessive damages claims, that the WTCP Plaintiffs'

positions were so far from those of the Aviation Defendants that mediation would be

unproductive.  SUF ¶ 16; *see also In re September 11 Litig.*, 723 F. Supp. 2d 534, 541 (S.D.N.Y.

2010) (Vyskocil Dec. Ex. N).  On February 23, 2010, the Settling Plaintiffs entered into the

Subrogation Settlement with the Aviation Defendants, resolving the Settling Plaintiffs' claims

for a lump sum of $1.2 billion.  SUF ¶ 15; *see also In re September 11 Litig.*, 723 F. Supp. 2d at

536, 540.

---

[8] *See* Complaint, *World Trade Center Properties LLC v. United Airlines, Inc.*, No. 08-CV-
3719 (AKH) (S.D.N.Y. filed Apr. 17, 2008) (Vyskocil Dec. Ex. H) and Complaint, *World
Trade Center Properties LLC v. American Airlines, Inc.*, No. 08-CV-3722 (AKH)
(S.D.N.Y. filed Apr. 17, 2008) (Vyskocil Dec. Ex. I), *consolidated into In re September
11 Litig.*, No. 21 MC 101 (AKH) (S.D.N.Y.); *see also* Cross-claims by the WTCP
Entities Against Certain Defendants in Plaintiffs' Amended Flight 11 Master Liability
Complaint, *In re September 11 Litig.*, 21 MC 97 (AKH) (S.D.N.Y. filed Sept. 4, 2004)
(Vyskocil Dec. Ex. K) and Cross-claims by the WTCP Entities Against Certain
Defendants in Plaintiffs' Amended Flight 175 Master Liability Complaint, *In re
September 11 Litig.*, 21 MC 97 (AKH) (S.D.N.Y. filed Sept. 2, 2004) (Vyskocil Dec. Ex.
J).

When the Aviation Defendants and Settling Plaintiffs, including IRI, moved for this Court's approval of the Subrogation Settlement, the WTCP Plaintiffs and other Silverstein-related entities sought to infringe upon IRI's rights as subrogee and to disrupt and delay approval of the agreement by pressing forward with the sole objection to the Subrogation Settlement. SUF ¶ 18; *see also In re September 11 Litig.*, 723 F. Supp. 2d at 537-38. Silverstein's misguided attempt to scuttle the years' long process that led to the Settlement (and that was overseen by this Court) failed. The Subrogation Settlement was approved by this Court on July 1, 2010 as "fair and reasonable" and the result of "hard-fought, arms-length, and good faith negotiations." SUF ¶ 19; *see also In re September 11 Litig.*, 723 F. Supp. 2d at 538, 543, 546.[9] On April 8, 2011, the Second Circuit rejected Silverstein's further challenge to the Subrogation Settlement, finding that Silverstein had "presented no evidence of the bad faith necessary to draw into question the settlement in this case." SUF ¶ 20; *In re September 11 Prop. Damage Litig.*, 650 F.3d 145, 153 (2d Cir. 2011) (Vyskocil Dec. Ex. O).

Pursuant to the terms of the Subrogation Settlement IRI received ▮▮▮▮ of the settlement proceeds, which including accrued interest, amounted to ▮▮▮▮▮▮ (the "Subrogation Recovery"). SUF ¶ 21. After deducting its attorneys' fees, IRI apportioned its Subrogation Recovery among the various September 11 claims it had paid, allocating

---

[9]   In the July 1, 2010 Order approving the Subrogation Settlement as "fair and reasonable," this Court noted that it had previously limited Plaintiffs' tort recovery against the Aviation Defendants to the fair market value of the net leasehold interests in the World Trade Center as of September 11, 2001, and that Plaintiffs had failed to show that the market value changed between the time they purchased the leaseholds for $2.805 billion and September 11, 2001. *See In re September 11 Litig.*, 723 F. Supp. 2d at 540-41.

████████████ to the WTC Complex claim as recoupment of a portion of the ████████ IRI

had paid to Plaintiffs. SUF ¶ 21; *see also* Response to Court Interrogatory.[10]

    C.    *After Briefing and Oral Argument This Court Rules that Plaintiffs'*
          *Tort Damages are Capped at $2.805 Billion, the Fair Market Value*
          *of the WTC Complex Leaseholds on September 11, 2001*

        Given the WTCP Plaintiffs' unwillingness to compromise their excessive

damages claims in the Recovery Action, the Aviation Defendants moved for summary judgment,

arguing that pursuant to New York's well-established "lesser of two" rule,[11] Plaintiffs' recovery

could not exceed the fair market value of the World Trade Center as of September 11, 2001. In a

series of decisions issued after briefing and oral argument as to the proper measure of Plaintiffs'

recoverable damages, this Court conclusively held that, pursuant to the "lesser of two" rule,

Silverstein's recovery from the Aviation Defendants was limited to the $2.805 billion fair market

value of the net leaseholds as of September 11, 2001. SUF ¶ 17; *see also* Recovery Action Order

I, 590 F. Supp. 2d at 543-44; *In re September 11 Litig.*, No. 21 MC 101 (AKH), 2009 WL

---

[10]    The WTCP Plaintiffs initially questioned the methodology used by IRI to allocate the
Subrogation Recovery across claims it had paid for September 11-related loss. However,
IRI and the WTCP Plaintiffs subsequently reached agreement that the amount of IRI's
~~Subrogation Recovery~~ ████████████ allocable to Silverstein's September 11 WTC Complex claim is
████████████████████ This agreement was memorialized in a stipulation signed by the WTCP
Plaintiffs and IRI and so-ordered by the Honorable Theodore H. Katz, U.S.M.J. on
October 26, 2011. That Stipulation is attached as Exhibit P to Vyskocil Dec. SUF ¶ 22.

[11]    The "lesser of two" or "*Fisher*" rule provides that the measure of a property damage
plaintiff's loss in the tort context is the lesser of the diminution in the property's market
value or replacement cost. *See* Recovery Action Order I, 590 F. Supp. 2d at 541, *citing
Fisher v. Qualico Contracting Corp.*, 98 N.Y.2d 534 (2002). Congress provided that the
law governing claims arising from, or in connection with, the terrorist-related attack on
the WTC Complex was to be the law of the state where the crash occurred, that is, New
York State law, unless preempted by, or inconsistent with, federal law. *See* Air
Transportation Safety and System Stabilization Act ("ATSSSA"), 49 U.S.C. § 40101
note. ATSSSA also limited the Aviation Defendants' (and Silverstein's) liability for all
claims arising from the September 11 terrorist attack to the limits of their respective .
liability insurance coverage. *Id.*

1181057, at *4 (S.D.N.Y. Apr. 30, 2009) (hereinafter, "Recovery Action Order II") (Vyskocil

Dec. Ex. Q).

> D.    *Having Failed to Thwart the Subrogation Settlement, By this*
> *Declaratory Judgment Action WTCP Now Seeks to Obtain*
> *a Share of IRI's Subrogation Recovery*

Having failed to thwart the Subrogation Settlement or obtain a recovery from the

Aviation Defendants, WTCP filed this Action against IRI and the WilProp Defendants seeking a

declaration that they are entitled to some portion of the Subrogation Settlement proceeds. *See*

Complaint, *World Trade Center Properties LLC v. Great Lakes Reinsurance (UK) PLC*, No. 10-

CV-1642 (AKH) (S.D.N.Y. filed Mar. 1, 2010) (Vyskocil Dec. Ex. R).  As to IRI, Plaintiffs

allege that pursuant to the terms of IRI's C-AR policy form, they are entitled to an "appropriate

share of any amount IRI recovers in its alleged capacity as a subrogee of the WTCP Plaintiffs."

*See* Amended Complaint ¶ 40.  WTCP's claim is baseless under the clear terms of the

subrogation provision of the C-AR policy form and based on this Court's prior rulings and

fundamental tenets of subrogation law.  Accordingly, IRI seeks summary judgment dismissing

this action and declaring that, as a matter of law, IRI does not owe Plaintiffs any portion of its

recovery from the Subrogation Settlement.

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Although inferences must be drawn in favor of the non-moving party, summary judgment is

proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).  If the evidence in favor of the non-moving party is "merely colorable or is not

10

Plaintiffs did not seek recovery from the Aviation Defendants together with IRI, but instead filed and litigated *separate* claims against the Aviation Defendants for their own alleged interest. *See* SUF ¶ 12. That decision precludes Plaintiffs from now seeking to share in IRI's subrogation recovery. Such an outcome is mandated in order to avoid the inequitable results that established subrogation principles prohibit, including a double recovery. *See Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 581 (1995) (noting the well-established public policy against using an insurer's subrogation recovery to award the insured with a double recovery for the same damage). For example, to the extent Plaintiffs ultimately recover from the Aviation Defendants, then any claim to recovery from IRI would be duplicative resulting in Plaintiffs improperly recovering twice for the same loss. Likewise, Plaintiffs cannot use IRI's Subrogation Recovery to circumvent a determination that they are not entitled to recover from the Aviation Defendants. Indeed, to allow Plaintiffs to share in IRI's Subrogation Recovery would allow them to collect that to which they are not legally entitled. Accordingly, no matter the outcome of the Plaintiffs' case against the Aviation Defendants, allowing them to share in IRI's Subrogation Recovery would result in the very windfall recovery that courts have said is impermissible.[12] *See id.*

---

[12]    IRI is aware that this Court is currently being briefed on the issue of whether WTCP's insurance recoveries "correspond to" and offset any potential tort recovery from the Aviation Defendants pursuant to CPLR 4545. This Court's decision on the correspondence issue, no matter how it is resolved, will not affect the prior ruling that the WTCP Plaintiffs' maximum recoverable tort damages are $2.805 billion. To be clear, if the Court finds that Plaintiffs' insurance proceeds correspond to its potential tort recovery, this Action will be moot because there is no way Plaintiffs can conceivably claim any unreimbursed damages given that their insurance recovery exceeded their tort damages by more than a billion dollars. Even if this Court determines that WTCP's insurance recoveries do not completely offset its potential tort recovery, WTCP can seek to collect any remaining tort damages directly from the Aviation Defendants and that would in no way alter the clear impact of the C-AR policy language that Silverstein is not entitled to any further money from IRI.

significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249-50 (1986) (internal citations omitted).

## ARGUMENT

I.    **PLAINTIFFS ARE NOT ENTITLED TO ANY PORTION OF IRI'S SUBROGATION RECOVERY BECAUSE, IN CLEAR VIOLATION OF THE TERMS OF THEIR POLICY, PLAINTIFFS PREJUDICED IRI'S EFFORTS TO MAKE SUCH A RECOVERY**

The subrogation provision of the C-AR policy form provides that Plaintiffs "*shall*

*do nothing ... to prejudice the subrogation rights of*" IRI and that any recoveries are to be

divided between "*each party instituting such proceedings.*" *See* Amended Complaint, Ex. 2 at

Section IV(C) (emphasis added). These provisions make clear that the subrogation clause upon

which Plaintiffs' claim is based addresses those situations in which the insurer and the insured

*jointly* pursue and obtain recovery from the third-party tortfeasor, and in which the insured does

nothing to prejudice the insurer's subrogation rights. *See Tropic Pollo I Corp. v. Nat'l Specialty

Ins. Co.*, No. 09-cv-1388(DLI), 2011 WL 2712941, at *3 (E.D.N.Y. July 8, 2011) (finding policy

language that insured "must do nothing after the loss" to impair the insurer's subrogation rights

to be "clear and unambiguous" and fit to be decided upon summary judgment). It is horn-book

law that an insured is entitled to share in a subrogation recovery *only* where the policyholder

cooperates fully with its insurers in seeking subrogation recovery. *See Allstate Ins. Co. v. Stein*,

1 N.Y.3d 416, 423 (2004) (noting the "longstanding equitable principle[ ]" that a subrogor shall

do nothing to prejudice the insurer's subrogation rights). Plaintiffs' actions, in which they

obstructed, prejudiced, and otherwise actively and improperly sought to impair IRI's right to

recoup a portion of its paid claims in the Subrogation Action, violated the clear terms of the

C-AR policy form.

11

Moreover, the WTCP Plaintiffs, in clear violation of the C-AR policy, sought to frustrate IRI's subrogation lawsuit at every possible stage. Rather than leave IRI to pursue its clear contractual right to recover as subrogee, Plaintiffs took the conscious step of moving to dismiss IRI's subrogation claims against the Aviation Defendants, an attempt that this Court denied. SUF ¶¶ 13, 14; *see also In re September 11 Litig.,* 649 F. Supp. 2d 171, 183-84 (S.D.N.Y. 2009). When IRI reached a settlement with the Aviation Defendants, Silverstein was the only party to oppose approval of the Subrogation Settlement before this Court and again in the Second Circuit. *See* SUF ¶¶ 18, 20. As such, rather than cooperating in IRI's subrogation recovery efforts as it was contractually obligated to do, Plaintiffs affirmatively endeavored to prejudice IRI's rights as subrogee, and in so doing, violated the unambiguous terms of the C-AR policy form. *See* SUF ¶ 8. Having attempted at every turn to block a Subrogation Recovery by IRI, it is the height of hypocrisy for Silverstein to now seek a share in that Recovery. As such, this Court should enter a declaratory judgment that Silverstein is entitled to no part of IRI's Subrogation Recovery and the case should be dismissed with prejudice. *See Tropic Pollo I,* 2011 WL 2712941, at *4 (granting summary judgment to insurer, and holding plaintiff-insured unable to recover under policy, when insured impaired insurer's subrogation rights).

## II.   PLAINTIFFS ARE COLLATERALLY ESTOPPED FROM ARGUING THAT THEIR "PROVABLE LOSS" EXCEEDS $2.805 BILLION AND HAVE ALREADY BEEN PAID WELL IN EXCESS OF THAT AMOUNT BY THEIR INSURERS

Even assuming Plaintiffs are entitled to invoke the subrogation provision of the C-AR policy form to share in IRI's net recovery from the Aviation Defendants, the undisputed facts of this case establish that Plaintiffs have not borne any of the "provable loss" associated with IRI's Subrogation Recovery, a clear pre-requisite to any right to share in that Recovery.

13

It is undisputed that this Court has conclusively decided that Plaintiffs' maximum tort damages associated with the destruction of the WTC Complex are capped – under the "lesser of two" rule – at $2.805 billion. SUF ¶ 17; *see also* Recovery Action Order I, 590 F. Supp. 2d at 543-44; Recovery Action Order II, 2009 WL 1181057, at *4; *In re September 11 Litig.*, 723 F. Supp. 2d at 540-41. Because the issue of Plaintiffs' maximum tort damages is the identical issue to be decided by this Court with regard to Plaintiffs' claim to have "provable loss" associated with the Subrogation Recovery in which Plaintiffs now seek a share, this Court's prior rulings collaterally estop Plaintiffs from arguing their "provable loss" exceeds $2.805 billion. Having already recovered $4.091 billion from their insurers, Plaintiffs cannot establish they have borne any portion of "the provable loss" which was the predicate for the Subrogation Recovery IRI received. As a result, this Court should dismiss Plaintiffs' Amended Complaint and enter a declaratory judgment that they are not, as a matter of law, entitled to *any* of IRI's Subrogation Recovery.

A.      **"Provable Loss" As Used in the C-AR Subrogation Provision is Capped by the Amount of the Insured's Tort Damages**

The C-AR policy form provides that the "***net amount of any recovery*** after deducting the costs of subrogation proceedings ***shall be divided*** between each party instituting such proceedings ***in the same proportion as each such party has borne the provable loss***." Amended Complaint, Ex. 2 at Section IV(C) (emphasis added). A plain reading of this provision dictates that the maximum amount of "any recovery" in such a subrogation action is limited by the amount of "the provable loss" associated with that recovery.

In a subrogation action, an insurer, after paying the insured under the policy, steps into the insured's place and may recover from the tortfeasor those amounts the insurer has paid,

14

limited to what the insured itself could have recovered had it not collected from its insurers and subject to any defenses the tortfeasor would have against the insured. *See Winkelmann,* 85 N.Y.2d at 581; *SR Int'l Business Ins. Co. v. World Trade Center Props. LLC,* No. 01-CV-9291 (HB), 2008 WL 2358882, at *8 (S.D.N.Y. June 10, 2008), *aff'd, SR Int'l Bus. Ins. Co. v. Allianz Ins. Co.,* 343 Fed. Appx. 629 (2d Cir. 2009).[13] In this case, Silverstein collected the full limits of his insurance policies from IRI and his other insurers. IRI then "stepped into" Plaintiffs' shoes, as a subrogee, and sued the actual tortfeasors allegedly responsible for the loss (*i.e.* the Aviation Defendants) in an attempt to recoup a portion of the ▮▮▮▮▮▮▮ it had paid to Plaintiffs. As a result, the maximum recovery by either Plaintiffs (the insured) or IRI (the subrogated insurer) for the "provable loss" that is envisioned by the C-AR policy form is limited to the amount that Plaintiffs may legally recover in an action against the Aviation Defendants (*i.e.,* the third-party tortfeasors allegedly responsible for the loss). Thus, while not defined in the C-AR policy form, the natural – and indeed only logical – meaning of "provable loss" makes clear that it was intended to be derived from the subrogation context and to therefore mean the amount of the insured's tort damages that are the predicate for the Subrogation Recovery.[14]

---

[13]  A subrogee is "entitled to all the rights and remedies belonging to the insured against a third party," both substantive and procedural. *In re September 11 Litig.,* 649 F. Supp. 2d 171, 177 (S.D.N.Y. 2009) (citing *Winkelmann,* 85 N.Y.2d at 581; Barry R. Ostrager & Thomas R. Newman, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 5.06(c) at 370 (14th ed. 2008)). The purpose of subrogation is to allow an insurer to directly recover from a third-party tortfeasor for damage the third-party has caused, and for which the insurer has already compensated the insured. *See Winkelmann,* 85 N.Y.2d at 581-82.

[14]  Indeed, the term "provable loss" appears just once in the 54-page C-AR policy form, and that appearance is in the subrogation clause. *See Mazzaferro v. RLI Ins. Co.,* 50 F.3d 137, 140 (2d Cir. 1995) (explaining that an insurance contract must read as a whole, "including any introductory clause or heading"). When a policy term is not defined, courts "afford the plain meaning" to the term. *See Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 116 (2d Cir. 2005). An established definition provided by state law or "widespread usage or custom" will serve as a default rule unless the parties clearly indicate that the term is to have some other meaning. *See Hugo Boss Fashions, Inc. v. Federal Ins. Co.,*

Any argument that "the provable loss" could exceed the loss that Plaintiffs are able to prove as against the Aviation Defendants is belied by the fact that the determination of an insured's tort damages in a suit against the tortfeasor conclusively establishes the full scope of the insured's loss for subrogation purposes. *See, e.g., Global Int'l Marine, Inc. v. US United Ocean Servs., LLC,* No. 09-6233, 2011 WL 2550624, at *14, 17 (E.D. La. June 27, 2011)

252 F.3d 608, 617-18 (2d Cir. 2001). Further, to the extent Plaintiffs argue that, because IRI provided insurance coverage for items such as replacement cost, the term "provable loss" must include additional losses, their argument fails for several reasons:

- First, as noted above, it is undisputed that IRI paid Plaintiffs the full amount of insurance available under their applicable policy, ███████████████████ To accept Plaintiffs' argument would turn IRI's Subrogation Recovery into additional insurance for which IRI and Silverstein did not contract and for which *no* premium was paid. Similarly, if IRI were required to pay Silverstein a portion of its Subrogation Recovery – which simply reimburses IRI for a portion of the payment it already has made to Silverstein – Silverstein would effectively receive a double recovery;

- Second, pursuant to the Stipulation of Settlement, IRI and Plaintiffs agreed that ███████████████████████████████████████████████████████████████████ *See* Stipulation of Settlement ¶¶ 4, 10. Thus, Plaintiffs' argument fails because IRI cannot possibly be obligated to compensate Plaintiffs under a policy that ██████████████████████

- Third, interpreting "provable loss," as used in the subrogation clause of the policy form, to have the same meaning as "loss" used elsewhere throughout the C-AR policy form, would render the term "provable" meaningless. *See Sirignano v. Chicago Ins. Co.*, 192 F. Supp. 2d 199, 204-05 (S.D.N.Y. 2002) ("[I]t is hornbook law that an insurance policy cannot be construed so as to render its terms meaningless or of no effect."). Excluding the term "provable" would allow Plaintiffs' to turn a subrogation provision into additional insurance. Instead, its inclusion makes clear that the parties intended the amount of provable loss for subrogation purposes to be determined through litigation in a third-party action against the tortfeasors consistent with general subrogation principles. *See Interested Underwriters at Lloyds v. Third Holding Corp.*, 88 A.D.2d 863, 863-64 (1st Dept. 1982) (striking monetary award to subrogated insurer and explaining that insured's valuations of insured property damage, sufficient for settlement with insurer under policy, were not sufficient to prove measure of property damage at trial).

16

(explaining that the "amount of damages to which the insured is legally entitled" is relevant in determining whether insured has been made whole such that insurer may enforce its subrogation rights); *Tampa Port Auth. v. M/V Duchess*, 65 F. Supp. 2d 1299, 1301-03 (M.D. Fla. 1997) (finding insured "made whole" by court-determined damages despite insured's claim that "actual repair costs" exceeded court award, and finding insurer entitled to exercise its right of subrogation), *aff'd*, 184 F.3d 822 (11th Cir. 1999); *Bartunek v. Geo. A. Hormel & Co.*, 513 N.W. 2d 545, 554 (Neb. Ct. App. 1994) (finding jury verdict as to insured's lost wages and medical expenses in suit against third-party tortfeasor was "full recovery" for purposes of determining if insurer could recover in subrogation); *United Pacific Ins. Co. v. Boyd*, 661 P.2d 987, 990 (Wash. Ct. App. 1983) (explaining that jury determination of insured's damages "fully compensate[d]" insured for loss such that insurer could recover on its subrogation claim); *Pontiac Mut. County Fire & Lightning Ins. Co. v. Sheibley*, 279 Ill. 118, 120 (1917) (noting that insured's total loss as between him and insurer was "conclusively determined" in lawsuit against third-party tortfeasor, despite insured's claim that loss was of greater value); *see also Berry v. St. Peter's Hosp.*, 678 N.Y.S.2d 674, 678 (3d Dept 1998) (rejecting intervention of insurer to protect subrogation rights in suit by insured against third-party tortfeasors when tortfeasors' liability coverage was less than "possible provable damages").[15]

---

[15]    In addition, it is notable that the WTCP Plaintiffs' have only submitted proofs of loss to their insurers for business interruption and replacement costs, claims which Plaintiffs' insurers have already paid. *See* Summary Order Regarding Motion for Collateral Setoff and Summary Judgment, 21 MC 101 (AKH) (S.D.N.Y. Sept. 30, 2009). These are the same losses for which the Plaintiffs have sued the Aviation Defendants, the damages for which this Court has conclusively determined to be no greater than $2.805 billion. Even if Plaintiffs claim losses in addition to their court-determined damages, they have not submitted proofs of loss for such damages as was required of them as policyholders. *See id.*; *see also* Amended Complaint, Ex. 2 at 4.

17

Moreover, it is only by reading the term "provable loss" in the subrogation provision of the C-AR policy form as synonymous with the amount of Plaintiffs' tort damages that this Court can ensure that the longstanding policy against using an insurer's subrogation recovery to award the insured with a double recovery for the same damage or to create insurance beyond the limits of the policy they elected to purchase can be effectuated. *See Winkelmann*, 85 N.Y.2d at 581. Indeed, to accept Plaintiffs' interpretation of the C-AR policy form and award Plaintiffs even a single penny more from IRI would result in an award beyond the amount to which Plaintiffs would otherwise be legally entitled. *See id.* (noting the well-established public policy against using an insurer's subrogation recovery to award the insured with a double recovery for the same damage). Such a contorted interpretation of the C-AR policy form should be rejected. *See Reape v. New York News, Inc.*, 504 N.Y.S.2d 469, 470 (2d Dept 1986) ("[W]here a particular interpretation would lead to an absurd result, the courts can reject such a construction in favor of one which would better accord with the reasonable expectations of the parties.").[16]

Likewise, permitting Silverstein to share in IRI's Subrogation Recovery based upon some alleged loss that he otherwise has no legal right to recover would render IRI's contractual subrogation rights meaningless. Plaintiffs' theory would eliminate the incentive for IRI to pursue a subrogation recovery in the first place and no insurer would intend to contract for

---

[16]     *See also Bretton v. Mutual of Omaha Ins. Co.*, 492 N.Y.S.2d 760, 762-63 (1st Dept 1985) (explaining that a court should not "accord a policy a strained construction merely because that interpretation is possible" and that "[a]n insurer is entitled to have its contract of insurance enforced in accordance with its provisions and without a construction contrary to its express terms") (citations omitted); *Amusement Consultants, Ltd. v. Hartford Life Ins. Co.*, 625 N.Y.S.2d 901, 902 (1st Dept 1995) (same); *City of New York v. 17 Vista Associates*, 599 N.Y.S.2d 549, 553 (1st Dept 1993) ("Contracts contrary to public policy are unenforceable and courts will not recognize rights purportedly arising from them.") (citation omitted).

such hollow rights. *See Reape*, 504 N.Y.S.2d at 470; *see also Allianz*, 416 F.3d at 116 (noting

the established principle that an insurance policy must not be interpreted in a way that "thwart[s]"

the obvious and clearly expressed purpose which the parties intended to accomplish" or "lead[s]"

to an obvious absurdity") (citations omitted). Instead, the plain meaning of the C-AR policy

form dictates that "the provable loss" associated with IRI's Subrogation Recovery rights equals

the amount that Plaintiffs can prove as their legally recoverable tort damages related to the

destruction of the WTC Complex.

> **B.**     **Plaintiffs Are Collaterally Estopped from Arguing their
> "Provable Loss" Exceeds $2.805 Billion, the Amount
> this Court Has Held is the Full Extent of Plaintiffs'
> Legally Recoverable Tort Damages**

Plaintiffs cannot use this Action as a back-door attempt to relitigate the maximum

amount of their recoverable tort damages. That issue has already been extensively litigated and

resolved by this Court. Under the doctrine of collateral estoppel, a party is barred from re-

litigating an issue of fact or law that has already been litigated and decided in an earlier

proceeding if (i) the issues in both proceedings are identical, (ii) the issue was actually litigated

and decided, (iii) the party to be precluded had a full and fair opportunity to litigate the issue, and

(iv) the issue as decided was necessary to support a final judgment on the merits. *See, e.g.,*

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992), *abrogated on other grounds as*

*recognized in Yung v. Lee*, 432 F.3d 142, 147-48 (2d Cir. 2005).[17]

---

[17]     Collateral estoppel is a doctrine rooted in notions of fairness and judicial economy, and
serves the purpose of preventing unnecessary litigation and relieving parties of the burden
of re-arguing already-decided issues. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322,
326 (1979). For purposes of collateral estoppel, a judgment is deemed final and binding
if it has been "fully litigated" such that the judicial decision is "sufficiently firm to be
given conclusive effect" and the court sees no reason to re-argue the issue. *See Lummus
Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *cert denied*, 368
U.S. 986 (1962); *Metromedia*, 983 F.2d at 366; *Freight Drivers v. Cleveland, Columbus*

In their suit against the Aviation Defendants, Plaintiffs were given a full and fair opportunity to be heard on the issue of their tort damages. After hearing all of Plaintiffs' arguments, this Court found the Aviation Defendants were entitled to summary judgment that the WTCP Plaintiffs' recovery against them would be limited to the market value of the destroyed WTC Complex net leaseholds as of September 11, 2001. *See* Recovery Action Order I, 590 F. Supp. 2d at 544; *see also In re September 11 Litig.*, No. 21 MC 101 (AKH), 2009 WL 2058385, at *1 (S.D.N.Y. May 26, 2009) (explaining that this Court granted partial summary judgment to the Aviation Defendants that New York law limits WTCP's recovery to the lesser of diminution in market value or the replacement cost). This Court subsequently held that $2.805 billion – the fair market value of the WTC Complex leaseholds at the time of the Complex's destruction – constitutes the maximum amount of Plaintiffs' recovery, and that "no triable issues remain as to this aspect of the Aviation Defendants' partial summary judgment motion." Recovery Action Order II, 2009 WL 1181057, at *4. These holdings were necessary to support this Court's order finally adjudicating that any recovery by the WTCP Plaintiffs against the Aviation Defendants will not exceed $2.805 billion. *See id.*

Furthermore, as discussed above, *see supra* at II.A., the extent of Plaintiffs' recoverable tort damages dictates the maximum amount of "provable loss" under the C-AR policy form. Any attempt by Plaintiffs to relitigate this issue by claiming the amount of "the provable loss" is something other than $2.805 billion is contrary to the clear terms of the subrogation provision of IRI's C-AR policy form and established subrogation principles. Accordingly, this Court's rulings capping Plaintiffs' tort recovery from the Aviation Defendants apply with equal (if not greater) force to Plaintiffs' claim that they are entitled to a portion of

---

*& Cincinnati Highway, Inc.*, No. CIV-85-810E, 1988 WL 84166, at *3 (W.D.N.Y. Aug. 9, 1988).

IRI's subrogation proceeds. *See Metromedia Co.*, 983 F.2d at 369 (affirming decision

collaterally estopping party from arguing issue fully litigated and decided in earlier proceeding).

As a result, Plaintiffs are collaterally estopped from arguing that their "provable loss," as that

term is used in the subrogation clause of IRI's C-AR policy form, exceeds $2.805 billion. *See*

*Lummus Co.*, 297 F.2d at 89; *Metromedia,* 983 F.2d at 366; *Freight Drivers,* 1988 WL 84166, at

*3.

      **C.**     **Plaintiffs Are Not Entitled to Any Portion of IRI's Subrogation Recovery As a Matter of Law Because After Receiving $4.091 Billion They Cannot Establish that They Have Borne Any of the Provable Loss**

      It is undisputed that Plaintiffs have been paid $4.091 billion in insurance proceeds

for their September 11 loss, over a billion dollars in excess of their $2.805 billion "provable

loss." SUF ¶¶ 10, 17; Recovery Action Order I, 590 F. Supp. 2d at 539; Summary Order

Regarding Motion for Collateral Setoff and Summary Judgment, 21 MC 101 (AKH) (S.D.N.Y.

Sept. 30, 2009). As a result, this Court should rule as a matter of law that Plaintiffs are not

entitled to any of the proceeds IRI received from the Subrogation Settlement, and dismiss

Plaintiffs' Amended Complaint because no "actual controversy" exists between Plaintiffs and

IRI regarding the proper sharing of the Subrogation Settlement.

## CONCLUSION

For the reasons set forth above, defendant IRI respectfully requests that this Court (i) grant IRI's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56; (ii) enter a declaratory judgment that Plaintiffs are not entitled to any share of IRI's recovery from the Subrogation Settlement; (iii) dismiss with prejudice Plaintiffs' Amended Complaint with respect to IRI; and (iv) award such other and further relief as the Court deems just and proper.

Dated:  December 5, 2011

SIMPSON THACHER & BARTLETT LLP

By: _____

Barry R. Ostrager
Mary Kay Vyskocil
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
bostrager@stblaw.com
mvyskocil@stblaw.com

*Attorneys for Defendant Industrial Risk Insurers*

22